UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN JAMES SCHRODT, | No. C 04-5086 SI (pr) |
| Petitioner, | **ORDER DENYING HABEAS PETITION** |
| v. | |
| PLEASANT VALLEY STATE PRISON WARDEN, | |
| Respondent. | |

## INTRODUCTION

This matter is now before the court for consideration of the merits of Brian James Schrodt's pro se petition for writ of habeas corpus concerning his 2002 conviction in the Contra Costa County Superior Court. For the reasons discussed below, the petition will be denied.

## BACKGROUND

A. <u>The Crime</u>

The habeas petition concerns Schrodt's conviction for continuous sexual abuse of a child. The evidence of the crime was described in the California Court of Appeal's opinion.

> In 1991, appellant married Nina Schrodt (Mrs. Schrodt). At that time they each had two minor children. Appellant had a five-year-old son, S.A., and a four-year-old daughter, D.S.; and Mrs. Schrodt had a three-year-old daughter, D.A., and a two-year-old daughter, "Jane Doe." In 1992, a daughter, D.C., was born to appellant and Mrs. Schrodt.

They lived in Pittsburg, Pleasant Hill and Antioch before moving to Hawaii in the summer of 2000. Appellant, and the four other children left for Hawaii on July 31. Mrs. Schrodt arrived in Hawaii on August 21. Mrs. Schrodt said that prior to moving to Hawaii appellant had been a good father who provided very well for his family.

Mrs. Schrodt testified that in the year prior to moving to Hawaii appellant's and her relationship was a "little rough." Appellant, an alcoholic, worked long hours and was drinking, and their sex life was minimal. In September 2000, shortly after moving to Hawaii, appellant's drinking increased and Mrs. Schrodt decided to separate from him and move back to the mainland with Jane Doe, D.A. and D.C., due to appellant's refusal to go to counseling for his alcoholism. Mrs. Schrodt told appellant she wanted to separate from him until he decided to go to counseling and "got his act together." Up to that point she had no plans to divorce him because they loved each other. In late September, without telling appellant, Mrs. Schrodt arranged to move some of her furnishings back to the mainland, removed $ 45,000 from her and appellant's bank account, and purchased airline tickets for herself, Jane Doe, D.A. and D.C. to fly to California on October 2.

Mrs. Schrodt's decision not to divorce appellant changed on September 30, 2000, when she came home unexpectedly and found appellant locked in the bathroom with 11-year-old Jane Doe, who was in the shower. Appellant, who had water running down his arm and down his back into his shorts, said he was just bringing Jane Doe some soap. Mrs. Schrodt took Jane Doe to the hospital, though, on the way, the child denied that "anything had happened." When Jane Doe objected to being examined, Mrs. Schrodt demanded to know the truth about what had happened. Jane Doe told Mrs. Schrodt that appellant had fondled her breasts that day, and, beginning when they lived in Antioch, appellant had engaged in other sexual conduct with her, including different types of vaginal penetration. When Mrs. Schrodt returned from the hospital she confronted appellant with Jane Doe's admission and said she was leaving with their four daughters. Appellant, who was intoxicated, made allusions to committing suicide and leaving her money for the children.

The next day, October 1, 2000, Mrs. Schrodt returned home and found appellant asleep on the couch. She called 911 after S.A. said that appellant had taken some pills. Appellant was then hospitalized. Mrs. Schrodt purchased another airline ticket for D.S., and on October 2, Mrs. Schrodt and the four girls flew to California.

Mrs. Schrodt did not report the molestation to police before leaving Hawaii. Sometime after arriving in California, she took Jane Doe to a Concord hospital to be examined. After Mrs. Schrodt said she suspected Jane Doe had been molested, the hospital notified Child Protective Services, who apparently called the police. Hospital personnel told Mrs. Schrodt that Jane Doe's examination should be conducted at the county hospital and a child molestation interview was scheduled. On October 24, 2000, police and a child crisis center advocate conducted a child molestation interview of Jane Doe during which she reported that appellant had begun molesting her about a year earlier. She also described the final incident in the shower. She said she did not tell anyone because of appellant's remarks about the family being separated. On November 7, 2000, pediatrician James Carpenter performed a sexual assault examination on Jane Doe at the county hospital. Jane Doe told Dr. Carpenter that beginning at age 10 in Antioch, she had had penile/vaginal, hand-to-breast, penis-to-anus, and hand-to-vaginal contact. She said the last such contact occurred in October 2000 in Hawaii. Dr. Carpenter testified that his examination of Jane Doe was consistent with her reported history of vaginal penetration.

Mrs. Schrodt told police that appellant was calling frequently and threatening suicide. At the suggestion of the police, Mrs. Schrodt began recording appellant's telephone calls. In a recording of an early December 2000 phone call played for the jury, appellant told Mrs. Schrodt that if he put the truth in his dissolution papers, she was "not going to get anything" because he would be sent to prison for at least 10 years. In a recording of a phone conversation between appellant and Mrs. Schrodt's mother, Virginia, Virginia said, "I don't understand how any man can have sex relations with a child that's 11 years old. Didn't you feel any shame at the time?" Appellant responded, "Of course."

Jane Doe was 13 years old at the time of trial. She testified that the first time appellant touched her sexually occurred in Antioch about a year before they moved to Hawaii. Appellant told her to lie on top of him, which she did not want to do. He then grabbed her, laid her on top of him with their stomachs touching and moved her up and down on top of him until he had an erection. He then touched her breasts with his hands. Later that night he told her to "keep it a secret." A couple of weeks later appellant kissed her and put his hands inside her pants and shirt and put her hand inside his pants. Once or twice a week, and sometimes more, while they lived in Antioch, Jane Doe said appellant molested her by trying to put his penis inside her vagina, mouth and anus. He also penetrated her vagina with his fingers and tongue. In the year before they moved to Hawaii, the longest period of time that elapsed without appellant molesting Jane Doe was one week. Sometimes the molestations occurred during the day and sometimes in the middle of the night. Appellant told Jane Doe that if she told anyone about the molestation she would split up the family. Jane Doe said the molestation continued frequently when the family moved to Hawaii. She said that just before her mother discovered her and appellant in the locked bathroom, appellant had kissed her and grabbed her breast.

*The Defense*

Testifying in his own behalf, appellant denied ever inappropriately touching Jane Doe. Regarding the taped telephone call between him and Virginia, appellant said he did not deny her accusations because all he knew at that point was that Mrs. Schrodt had accused him of molesting Jane Doe in the shower. Appellant also explained that when confronted by Virginia, he was thinking about a time in Hawaii when Jane Doe rubbed lotion on his dry feet. He also said he "shut down at that point" during the conversation. Regarding the taped telephone call between him and Mrs. Schrodt, appellant said he did not deny her accusations of molesting Jane Doe because previously when he had denied it, Mrs. Schrodt would yell, scream and hang up [the] phone. When asked why he told Mrs. Schrodt that if he put the truth in his dissolution papers, she would "not get anything" because he would be sent to prison for at least 10 years, appellant's only response was that Mrs. Schrodt stated in her dissolution petition that he had molested Jane Doe and Mrs. Schrodt wanted him to sign a "blank response" stating that the molest had happened, which he would not do.

Appellant also admitted he had a close relationship with Jane Doe and one of his other daughters, and often laid on the couch with his head in Jane Doe's lap. As to the shower incident, appellant said that at Jane Doe's request he brought her soap. He denied locking the bathroom door and kissing and fondling her.

Appellant said that two or three times before moving to Hawaii he had tried to commit suicide "in a nonserious extent." He did not recall trying to kill himself on October 1, 2000. He admitted to trying to commit suicide in early January 2001, around the time the criminal charges were filed against him.

   Obstetrician-gynecologist James Tappan reviewed the records of Dr. Carpenter's sexual assault examination of Jane Doe. Dr. Tappan opined that there was no evidence of trauma or residual injury, and he could not say for sure whether there had been penile penetration of Jane Doe's vagina. He concluded that there was no physical evidence to conclude that Jane Doe had been sexually assaulted.

   Michael Moffett, appellant's good friend and coworker for 15 years, testified to appellant's reputation for truthfulness and integrity. Moffett said he had never seen appellant do anything inappropriate with his children or stepchildren and the charges against appellant were "ludicrous." On cross-examination Moffett said he would not be appellant's friend if appellant was a child abuser.

   Appellant's 15-year-old daughter, D.S., testified that when her family lived in Antioch, she shared a bedroom with Jane Doe and D.A., and D.S.'s and Jane Doe's beds were separated by a "cubical wall." D.S. did not hear Jane Doe regularly get up and leave the bedroom in the night, except to go to the bathroom. During the three weeks the children and appellant lived in Hawaii without Mrs. Schrodt, D.S. shared a bedroom with D.A. and Jane Doe had her own room. D.S. said she left Hawaii with Mrs. Schrodt and her sisters to protect her youngest sister, D.C., from being hit by S.A., Jane Doe and Mrs. Schrodt.

Cal. Ct. App. Opinion, pp. 2-6.

B. <u>Case History</u>

On March 4, 2002, Schrodt was convicted in a jury trial in Contra Costa County Superior Court of two counts of continuous sexual abuse of a child. <u>See</u> Cal. Penal Code § 288.5. The jury found that as to count two, at least one of the continuous offenses occurred in both Contra Costa County and in Hawaii. On May 3, 2002, the court sentenced Schrodt to state prison for a term of 12 years as to each count, with the sentence under count one stayed under California Penal Code section 654.

Schrodt appealed. The California Court of Appeal reversed the conviction as to count one and otherwise affirmed the judgment. On March 24, 2004, the California Supreme Court denied review.

Schrodt then filed this action for a federal writ of habeas corpus on December 1, 2004. His petition alleged 11 cognizable claims, of which all but four were later dismissed because state court remedies had not been exhausted. The following claims remained for adjudication: the exclusion of letters written by Mrs. Schrodt before leaving Hawaii denied Schrodt his right to due process, to present a defense and to confront witnesses; Schrodt's Sixth Amendment

4

Confrontation Clause right was violated when the trial court allowed a support person to be present during Jane Doe's testimony; the trial court's instruction that permitted the jury to use a probability standard to evaluate testimony by two witnesses violated Schrodt's right to due process and to present a defense by reducing the prosecutor's burden of proof; and the denial of Schrodt's new trial motion based on new evidence violated Schrodt's right to due process. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. Schrodt filed a traverse. The matter is now ready for consideration on the merits.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Contra Costa County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b), (c). Schrodt chose to dismiss his unexhausted claims and the state judicial remedies have been exhausted for the claims remaining to be adjudicated.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

5

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may nor issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

A.   Exclusion Of Mrs. Schrodt's Letters (Claim 1(A))

At trial, Schrodt moved to admit letters written by Mrs. Schrodt as prior inconsistent statements. RT 737-38. Although Mrs. Schrodt left the letters for him after she allegedly discovered the abuse, the letters did not mention the molestation and stated that Mrs. Schrodt did not want a divorce. RT 740-41. The trial court denied Schrodt's motion, stating that the content of the writings was not inconsistent with Mrs. Schrodt's testimony. RT 748. Schrodt contends

6

that the exclusion of the letters violated his rights to due process, to present a defense, and to confront witnesses because the letters were inconsistent with Mrs. Schrodt's testimony. Furthermore, he contends that the exclusion was prejudicial because it deprived him of the opportunity to confront and cross-examine Mrs. Schrodt.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 403 (1965). The Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-examination based on other concerns, such as confusion of issues, harassment, prejudice, witness safety, or interrogation that is repetitive or only marginally relevant. See Delaware v. Van Ardsell, 475 U.S. 673, 679 (1986). Due process also does not guarantee a defendant the right to present all relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. The defendant must establish that his right to have the jury consider the excluded evidence in the case was a "fundamental principle of justice." See id.; see also Chia v. Cambra, 360 F.3d 997, 1003 (9th Cir. 2004) (it is clearly established federal law under AEDPA that when hearsay statement bears persuasive assurances of trustworthiness and is critical to the defense, the exclusion of that statement may rise to the level of a due process violation). If an error is found, the court must consider whether it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). The error must have resulted in actual prejudice to support habeas relief. See id.

The California Court of Appeal noted that there was no question that the letters were left for Schrodt after Mrs. Schrodt had discovered him with Jane Doe in the locked bathroom. Cal. Ct. App. Opinion, p. 8. The court therefore concluded that the exclusion of the letters was erroneous because "the jury could have found that the failure to mention the molestation in the

7

1 writings was inconsistent with Mrs. Schrodt's testimony concerning her belief that Jane Doe had
2 been molested." Id. However, the court further concluded that any error in excluding the letters
3 was harmless because "during the extensive cross-examination of Mrs. Schrodt, all material
4 aspects of the letter and notes were disclosed and conceded by the witness." Id.

5 Although the California Court of Appeal did not expressly mention any Supreme Court
6 precedent, for the purposes of 28 U.S.C. § 2254(d), a state court decision need not cite or
7 show awareness of Supreme Court cases, "so long as neither the reasoning nor the result of
8 the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). The state
9 appellate court reasonably concluded that the error was harmless. Although Mrs. Schrodt's
10 letters were not admitted into evidence, she was extensively cross-examined during the trial. RT
11 138-239, 248-51. During the cross-examination, all material aspects of the letters were
12 disclosed and conceded by Mrs. Schrodt. RT 207-34. Schrodt's counsel confronted Mrs.
13 Schrodt with the inconsistencies in the letters. RT 213-20, 232-34. Although the jury did not
14 see the pieces of paper, it heard extensively about their contents during the direct and cross
15 examination of their author. The jury heard Mrs. Schrodt's testimony and observed her
16 demeanor. Moreover, Schrodt admitted that Mrs. Schrodt caught him in the locked bathroom
17 with Jane Doe. RT 615. He also did not deny the molestation when Mrs. Schrodt's mother
18 asked if he was ashamed of having "sex relations with a child." RT 626-27. Finally, the jury
19 heard Jane Doe testify about being molested by Schrodt. RT 348-428. The exclusion of the
20 letters did not have a "substantial and injurious effect or influence in determining the jury's
21 verdict," Brecht, 507 U.S. at 623, because the jury in this case would have reached the same
22 verdict even if the letters were admitted. Therefore, the Court of Appeal reasonably concluded
23 that the erroneous exclusion of the letters was harmless. Because the decision of the California
24 Court of Appeal was neither contrary to nor an unreasonable application of established federal
25 law as determined by the Supreme Court, Schrodt is not entitled to habeas relief on this claim.
26 / / /
27 / / /
28

8

B.     Presence Of A Support Person At Trial (Claim 3)

When 13-year old Jane Doe testified at trial, a support person from Rape Crisis was present next to her. RT 344-45. Before her testimony, the judge admonished the jury not to consider the procedure in evaluating Jane Doe's testimony. RT 347. Schrodt's counsel did not object to the presence of the support person. Schrodt contends that, despite the court's admonition and Schrodt's lack of timely objection, his Sixth Amendment right to confront witnesses was violated by the presence of the support person. He argues that the Constitution requires inquiry as to the necessity of a support person.

1.     The Claim Is Procedurally Defaulted

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750. Where the state court decision rests on clearly alternate grounds, one invoking a state procedural bar and the other addressing the merits, the state procedural ground may still be sufficiently independent to preclude habeas review. See Bargas v. Burns, 179 F.3d 1207, 1214 (9th Cir. 1999).

Here, the decision of the Court of Appeal rested on clearly alternate state procedural grounds. The appellate court rejected Schrodt's claim because he failed to object to the presence of the support person; this failure to object at trial constituted a waiver. Cal. Ct. App. Opinion, pp. 9-10. The court also rejected the claim on the merits, holding that there was no error because the support person did not testify and because there was no evidence of any impact on the jury. Id. at 10-11. Even though the state appellate court reached the merits, the state

9

1 procedural bar imposed is sufficiently independent to preclude habeas review. The Court of
2 Appeal's rejection of the claim for failure to object at trial is a procedural bar that will be
3 honored by this court. The Ninth Circuit has recognized and applied the California
4 contemporaneous objection rule in affirming denial of a federal petition on grounds of
5 procedural default where there was a complete failure to object at trial. See Vansickel v. White,
6 166 F.3d 953, 957-58 (9th Cir. 1999), cert. denied, 528 U.S. 965 (1999); see also Rich v.
7 Calderon, 187 F.3d 1064, 1070 (9th Cir. 1999), cert. denied, 528 U.S. 1092 (2000).

### 2.    The Claim Fails Under § 2254(d)

Even if the claim were not barred by procedural default, Schrodt's claim would still fail under § 2254(d) because his Confrontation Clause rights were not violated.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI; see Pointer, 380 U.S. at 403 (confrontation right applies to the states through the 14th Amendment). It guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. See Coy v. Iowa, 487 U.S. 1012, 1016 (1988) (placement of screen between defendant and child sexual assault victims during testimony against defendant violated defendant's Confrontation Cause rights); Davis v. Alaska, 415 U.S. 308, 315 (1974) (notwithstanding state policy protecting anonymity of juvenile offenders, refusal to allow defendant to cross examine key prosecution witness denied defendant constitutional right to confront witnesses). This physical confrontation "enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846 (1990). The right guaranteed by the Confrontation Clause also

> (1) insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination . . .; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility .

Id. at 845-46.

The California Court of Appeal held that Schrodt did not demonstrate any constitutional error. Cal. Ct. App. Opinion, p. 11. After looking to cases like Adams and Craig, the court concluded that a hearing to determine the necessity of the support person was not necessary. Id. at 10-11. The support person was not a testifying witness. Moreover, the court concluded that "the record does not suggest that the presence of the support person seated next to Jane Doe during her testimony had any impact on the jury's perception of Jane Doe's demeanor, or in any way influenced Jane Doe's testimony." Id. at 11. The court also noted that Jane Doe testified in person, which permitted face-to-face confrontation. Id.

The state appellate identified the key case, Craig, and set out the required components of the Confrontation Clause: "(1) the face-to-face confrontation, (2) the oath, (3) the cross-examination, and (4) the jury's observation of the witness's demeanor." Cal. Ct. App. Opinion, p. 10. Furthermore, the decision of the Court of Appeal was not an unreasonable application of Craig. Although Schrodt argues that the presence of the support person suggested a court-sanctioned verification of Jane Doe's trauma, the trial court admonishment to the jury not to consider the procedure eliminated that concern. RT 347-48. More importantly, the required components of the Confrontation Clause as set out in Craig were met. Jane Doe testified in person, permitting face-to-face confrontation. RT 348-428. She gave her testimony under oath. RT 346. She was cross-examined by Schrodt's counsel. RT 384-423. During her testimony, the jury could observe her demeanor.

Schrodt contends that under Craig, a showing of necessity should have been made before the support person was permitted to sit next to Jane Doe while she testified. However, the necessity hearing discussed in Craig, 497 U.S. at 851-57, was in the context of a child witness testifying via a one-way closed circuit television. In Craig, the face-to-face confrontation requirement of the Confrontation Clause had not been met. Here, the requirements of the Confrontation Clause had been met. The Court of Appeal's decision was not contrary to nor an unreasonable application of federal law, and Schrodt is not entitled to habeas relief on this claim.

11

C. <u>Improper Jury Instruction (Claim 5)</u>

Schrodt claims that the trial court's instruction that permitted the jury to use a probability standard to evaluate the testimony of the witnesses violated his rights to due process and to present a defense. The trial court instructed the jury: "You may reject the whole testimony of a witness, who wilfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars." CALJIC No. 2.21.2. Schrodt contends the instruction permitted the jury to convict him based on mere preponderance of the evidence and, therefore, lessened the prosecution's burden of proof in violation of his constitutional rights.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991). The instruction may not be judged in artificial isolation, but must be considered in context of instructions as a whole and the trial record. <u>Id.</u> Additionally, the court must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht</u>, 507 U.S. at 637.

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. <u>In re Winship</u>, 397 U.S. 358, 364 (1970). Taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury. <u>See</u> <u>Victor v. Nebraska</u>, 511 U.S. 1, 6 (1994) (citing <u>Holland v. United States</u>, 348 U.S. 121, 140 (1954)).

The California Court of Appeal rejected Schrodt's claim. The court relied on the California Supreme Court's decision in <u>People v. Riel</u>, 22 Cal. 4th 1153, 1200 (2000), that CALJIC 2.21.2 does not violate a defendant's right to due process. Cal. Ct. App. Opinion, p. 15. In <u>Riel</u>, the California Supreme Court upheld the validity of CALJIC 2.21.2 explaining that "[e]ven if the language 'probability of truth' standing alone would be 'somewhat suspect' when applied to a prosecution witness, it does not stand alone. The trial court correctly

12

1 instructed the jury on the reasonable doubt standard and told it to 'consider all the instructions
2 as a whole and . . . to regard each in the light of all the others.' The instructions as a whole
3 correctly instructed the jury on the prosecution's burden of proof." 22 Cal. 4th at 1200.
4 Although Riel did not cite any Supreme Court precedent, its holding that "[t]he instructions as
5 a whole correctly instructed the jury" mirrors the federal law as determined by the Supreme
6 Court in cases like Estelle and Victor.

7 The California Court of Appeal decision was not contrary to federal law because its
8 reasoning followed the reasoning of the California Supreme Court, which in turn followed
9 clearly established Supreme Court precedent. In addition to instructing the jury with CALJIC
10 2.21.2, the trial court also gave the jury instructions regarding the burden of proof: "This
11 presumption [of innocence] places upon the people the burden of proving guilt beyond a
12 reasonable doubt. . . . Defendant may be found guilty if the proof shows beyond a reasonable
13 doubt and you unanimously agree that the defendant committed three of these acts." RT 770,
14 772. The instructions taken as a whole made clear to the jury that the prosecution had to prove
15 Schrodt's guilt beyond a reasonable doubt. The probability standard dealt only with the
16 testimony of the witnesses and was to be considered in the context of the rest of the instructions.
17 The decision of the appellate court was not an unreasonable application of clearly established
18 federal law. Schrodt fails to establish that he is entitled to the writ on this claim.

D. <u>Denial Of A New Trial Based On Newly Discovered Evidence (Claim 6)</u>

After his conviction, Schrodt provided the trial court with declarations from his defense counsel, his son S.A., and himself. These declarations stated that Mrs. Schrodt was abusive toward the children and capable of intimidation. Schrodt claimed to be only vaguely aware of this at the time of the trial. Schrodt contends that this newly discovered evidence casts doubt over the veracity of Mrs. Schrodt and Jane Doe. He also argues that it tends to show that Jane Doe corroborated Mrs. Schrodt out of fear of abuse by Mrs. Schrodt. Schrodt argues that the trial court's denial of his new trial motion based on this newly discovered evidence violates his

13

right to due process. The state appellate court determined that the denial of the motion for new trial was not an abuse of discretion, as it had to be to obtain relief on appeal.

Federal habeas relief is only available if the decision of the state court was contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

Although Schrodt claims that his right to due process was violated, he does not identify any Supreme Court case requiring that new trials be permitted on discovery of new evidence. Schrodt also has not identified any more specific constitutional provision violated by the denial of his new trial motion. He does not contend that the newly discovered evidence was suppressed by the prosecution. He does not contend that there was insufficient evidence to support his conviction. He does not contend that he received ineffective assistance of counsel at his motion for new trial. He does not contend that the court refused to hear his motion for new trial or to consider the newly discovered evidence. Schrodt's only claim is that the trial court reached the wrong conclusion on his motion for new trial even though it followed the right procedure. The Supreme Court has never established this as a constitutional right; therefore, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. Under these circumstances, federal habeas relief is not available.

Even if Schrodt could identify clearly established federal law requiring a new trial if new evidence emerged, there was no error in denying his motion for new trial. First, the evidence was simply not newly discovered. Schrodt had the opportunity but chose not to call his son S.A. as a witness during trial. CT 640. Schrodt's counsel had interviewed S.A. before trial, and S.A. described Mrs. Schrodt's horrible behavior. CT 641. Schrodt's counsel admitted in his declaration to having been "vaguely aware" of the claims that Mrs. Schrodt was an abusive mother. CT 549. He also admits that Schrodt advised him that he had seen some of the verbal

14

abuse and had heard from his children about certain instances. Id. The evidence was not newly discovered.

Second, even if the evidence was newly discovered, it was speculative at best that the evidence would have undermined the testimony of Mrs. Schrodt and Jane Doe. As the trial court found, it was not probable that a different result would have been reached by the jury with the new evidence. RT 988. The jury had observed Mrs. Schrodt and Jane Doe during their direct testimony and extensive cross-examination. Their testimony in addition to Schrodt's tape-recorded admissions presented strong evidence of his guilt. It was not erroneous for the trial court to deny the motion for new trial based on the allegedly newly discovered evidence.

Schrodt has not demonstrated that the rejection of his motion for new trial was contrary to or an unreasonable application of clearly established federal law. He is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall close the file.

IT IS SO ORDERED.

DATED: July 5, 2006

SUSAN ILLSTON
United States District Judge